**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE STECICH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-1400 |
| v. | ) | |
| | ) | Judge April M. Perry |
| MENARD, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After tripping over an electrical cord and falling at a Menard, Inc. ("Menard") store in Crestwood, Illinois, Plaintiff Diane Stecich ("Plaintiff") filed this action against Menard, alleging that it is liable in common law negligence for her injuries. Menard now moves for summary judgment. For the reasons that follow, the Court denies Menard's motion.

## BACKGROUND

On January 11, 2022, Plaintiff was shopping for a reclining chair in the furniture department at the Crestwood, Illinois, Menard store. Doc. 29 at 2; Doc. 34 at 2. In the furniture department, reclining chairs were arranged "around the perimeter and inside the perimeter of the department," with electrical cords used to power the chairs. Doc. 29 at 2, 4; Doc. 34 at 2–3.

Plaintiff had been in the furniture department for about fifteen minutes when she saw a chair of interest behind the first row of chairs, on the inside of the display. Doc. 29 at 2; Doc. 34 at 2. There was no designated walkway to get to the chair inside the perimeter of the display, but the chairs were spaced such that Plaintiff was able to move between them. Doc. 29 at 2; Doc. 34 at 2. As Plaintiff made her way towards the chair, her foot got caught in electrical cords on the

floor, causing Plaintiff to fall on her left side. Doc. 29 at 3; Doc. 34 at 2. As a result, Plaintiff testified that she suffered a great deal of pain and serious injury. *See, e.g.*, Doc. 29-2 at 6.

On January 8, 2024, Plaintiff brought suit in the Circuit Court of Cook County, Illinois. Doc. 1-1. Menard thereafter timely removed. Doc. 1. In her complaint, Plaintiff alleges that Menard is liable for her injuries because it was negligent in allowing electrical cords to be laid in the walkway of the furniture department and failed to properly place or conceal the electrical wiring, which it knew or should have known was a hazard. Doc. 1-1 at 4–5.

From a picture taken by Plaintiff just after her fall, the electrical cords appear to consist of a rectangular white surge protector and extension cord connected to two long, thin, dark-colored cords. Doc. 29-5. The cords and chairs rested on a green carpet. *Id.* In the picture, the white surge protector is on the carpet several inches from the nearest chair, with the two dark-colored cords plugged into the white surge protector and extending a couple of feet outwards over the carpet before looping back towards the reclining chairs. *Id.*; *see also* Doc. 29 at 3–5; Doc. 34 at 2–3. Plaintiff testified that she believed she tripped on the dark-colored cord farthest from the white surge protector. Doc. 29-2 at 8. Plaintiff testified that when she tripped, her foot pulled the cord forward with her as she fell. Doc. 35 at 3; Doc. 38 at 2.

Two managers at the Crestwood Menard store testified that the electrical cords were usually tucked under the feet of the sofas or chairs in the furniture department. Doc. 29 at 4–6; *see also* Doc. 34 at 3. Both also testified that if they had seen the cords as depicted in Plaintiff's picture, they would have tucked the cords away so they were not in the middle of the display. Doc. 29-6 at 9; Doc. 29-7 at 7. One manager added that if the cords could not be completely tucked underneath the furniture, he "would have addressed that with the hardware department manager to get them taped down or moved." Doc. 29-6 at 9. Neither manager had received a

2

complaint or heard of any other guest or employee tripping over the cords in the furniture department prior to Plaintiff's incident. Doc. 29 at 5–6; Doc. 34 at 3–4.

## LEGAL STANDARD

A court grants a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to material facts is genuine "if the evidence is such that a reasonable jury" could resolve the dispute by returning a verdict for the nonmoving party. *Id.* The moving party bears the initial responsibility of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Ultimately, however, the party who bears the burden of proof on any issue may not rest on the pleadings and must affirmatively present some evidence to support its claims. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). At the summary judgment stage, the court considers the evidence in the light most favorable to the nonmoving party. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690 (7th Cir. 2010).

## ANALYSIS

Menard argues that it cannot be held liable because the cords were an open and obvious condition from which Menard owed no duty to protect Plaintiff. Menard further argues that it did not have actual or constructive notice of the condition of the cords, and therefore Plaintiff's injury was not reasonably foreseeable. Doc. 28 at 2–4. The Court disagrees that the undisputed facts support either conclusion.

3

Illinois law controls this diversity case. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). Under Illinois law, the "essential elements of a common law negligence cause of action are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury caused by that breach." *Reed v. Galaxy Holdings, Inc.*, 914 N.E.2d 632, 636 (Ill. App. Ct. 2009). "Whether a duty exists is a question of law to be determined by the court." *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). "The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010).

Generally, landowners owe a duty of care to their visitors. *Park v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 960 N.E.2d 764, 769 (Ill. App. Ct. 2011). However, the open and obvious doctrine provides a notable exception to that duty of care. *Id.* This is because "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996). In cases involving such conditions, the law generally assumes that the "open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.* "[W]here no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). However, "where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual." *Wilfong*, 930 N.E.2d at 520.

4

The parties do not dispute the physical nature of the cords based on the picture taken by Plaintiff after her fall. But the only relevant question is whether the cords were open and obvious *before* Plaintiff tripped. And the answer to this question depends upon the degree to which the cords were exposed and where exactly they were placed immediately prior to Plaintiff's fall. Unfortunately, there is no answer to this question in the record that has been presented in support of summary judgment.

Menard argues that the cords were so exposed at the time of Plaintiff's fall as to be open and obvious, primarily relying on the photograph of the cords taken after Plaintiff's fall to support this theory. Plaintiff, however, testified that when she tripped she pulled the cords out with her foot. Viewing the facts in the light most favorable to Plaintiff, her fall would have repositioned the cords. Because the record is inconclusive as to the location and visibility of the cords at the time of the incident, the question of whether the cords were an open and obvious hazard is a factual question that the Court cannot resolve. *See, e.g.*, *Stephen v. Home Depot U.S.A., Inc.*, 2020 WL 7260803, at *4 (N.D. Ill. Dec. 10, 2020) (factual dispute of whether garden hose on the ground was visible to a person rounding the corner towards the hose must be submitted to jury); *Hamilton v. Target Corp.*, 2013 WL 6050441, at *3 (N.D. Ill. Nov. 15, 2013) ("[T]he puddle's visibility is clearly in dispute. While [the plaintiff] admits that *after* she slipped, the puddle was apparent, other evidence suggests that the puddle was not readily visible *prior* to [the plaintiff's] slip.").

Moreover, even if the physical nature of the cords were not in dispute, the Court is not convinced that the cords as depicted in the photograph taken by Plaintiff were open and obvious as a matter of law. Whether a physical hazard is open and obvious depends on whether "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the

position of the visitor, exercising ordinary perception, intelligence, and judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 907 (7th Cir. 2018) (quoting *Bruns*, 21 N.E.3d at 690). This determination does not depend on the plaintiff's subjective knowledge or awareness but on whether a reasonable person confronted with the same situation would have appreciated and avoided the hazard. *Id.* at 908.

Applying this standard, the Court is not convinced that the risk of tripping over the cords was readily appreciable to a person exercising ordinary perception, intellect, and judgment. First, the dark-colored cord Plaintiff tripped on was thin and lacked significant color contrast with the green carpet. *Cf. Holland v. Menard, Inc.*, 2025 WL 1413151, at *2 (N.D. Ill. May 15, 2025) (collecting cases where stark color contrasts between floor and hazardous condition constituted open and obvious risks). The photograph of the cords shows that the reclining chairs created shadows on the floor, and where the cord is in shadow it is hardly visible at all. *See* Doc. 29-5. Additionally, the cords snaked around the furniture display, which had no designated walkway. A reasonable jury could decide that a reasonable person may not have readily appreciated the risk of floor hazards, such as exposed cords, as they attempted to navigate through a furniture display without a clear aisle. *See Buchaklian v. Lake Cnty. Fam. Young Men's Christian Ass'n*, 732 N.E.2d 596, 601 (Ill. App. Ct. 2000) (finding that court erred in concluding defect was open and obvious as a matter of law in part because of the "short time that a person has in which to discover the defect as he or she takes a few steps towards [it]," and because invitees are not "required to look constantly downward"); *Stephen*, 2020 WL 7260803, at *4 (finding that a reasonable person rounding the corner may not have recognized garden hose on the floor as an open and obvious danger).

The Court is not persuaded by Menard's argument that an objectively reasonable person would suspect cords were in the area due to the presence of powered recliners. There are many ways to provide power that do not involve cords laying atop carpeting.[1] The Court is also not persuaded by Menard's argument that the thin dark cord Plaintiff thought she tripped over should have been readily appreciable to her or any reasonable person who had already navigated past the white surge protector. Plaintiff testified that she did not see the white extension cord. Doc. 29-2 at 8. The mere fact that Plaintiff unknowingly navigated past two cords before her luck ran out at the third cord does not mean that the third cord was open and obvious.

Finally, Plaintiff argues that even if the cords were open and obvious, the distraction exception applies. Doc. 35 at 5. However, because the record is inconclusive as to whether the cords were an open and obvious hazard in the first place, the Court finds it unnecessary at this time to evaluate whether Plaintiff was distracted as a matter of law.

Menard next argues that summary judgment is appropriate because it did not have notice of the cords having been pulled out from under the chair. Without notice, Menard argues that Plaintiff's injury was not reasonably foreseeable. Initially, the Court questions the applicability of the cases cited by Menard. Those cases hold that "[w]hen a business's invitee is injured by slipping on a *foreign substance*, the business can be liable if the invitee establishes that" the business had constructive or actual notice, or the business dropped or otherwise placed the substance there itself. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (emphasis added). Here though, the "substance" Plaintiff tripped on was not foreign to the furniture department; it was a part of the furniture display. Even if the cords' precise positions might make

---

[1] In fact, if anyone should be able to solve a problem like this, it is the home improvement professionals at Menard stores.

them a foreign substance in the context of this case, however, the evidence could support a finding that Menard placed the cords where they were when Plaintiff tripped.

To prove that the defendant's negligence, rather than that of a third party, created the dangerous condition, Illinois courts require that a plaintiff:

> (1) demonstrate that the foreign substance was related to the defendant's business, and (2) offer "some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises."

*Piotrowski*, 842 F.3d at 1038 (quoting *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 439 (Ill. 1958)). The parties do not dispute that the cords were related to Menard's business and that Menard placed the cords in the furniture department to power the display recliners. Doc. 29 at 4; Doc. 34 at 3. However, Menard argues that it did not create the hazardous condition because the cords were normally tucked under the furniture and Menard did not pull the cords out from under the furniture.

The record, however, is inconclusive as to where the cords were placed directly before Plaintiff's fall. Though Menard employees testified that cords were normally completely tucked away, they were not taped down in any particular location. Doc. 29-6 at 6. Moreover, the chairs appear to have been spaced at least a foot apart and the white extension cord held multiple cords powering multiple chairs. Doc. 29-5. Thus, the cords would have had to be exposed to reach between the chairs. A reasonable jury could infer from this evidence that this placement was Menard's responsibility: Menard's employees were charged with maintaining the cords, and the

cords were just about where Menard expected them to be in order to power the recliners.[2]
Therefore, the question of whether they were negligently placed is a question for the jury. *See,
e.g.*, *Piper v. Moran's Enterprises*, 459 N.E.2d 1382, 1389 (Ill. App. Ct. 1984).

In reaching this conclusion, the Court is mindful of Menard's argument that a business is
not required to constantly monitor every inch of its store for hazards. Indeed, the costs associated
with imposing such a burden would far outweigh the potential benefits in risk reduction.
However, this case is not akin to the many slip-and-fall cases cited by Menard where the origins
of the slippery substance remained a mystery. *See, e.g.*, *Tomczak v. Planetsphere, Inc.*, 735
N.E.2d 662, 667 (Ill. App. Ct. 2000) (skating rink not liable for plaintiff's slip in puddle on ice
rink because "plaintiff has not asserted that the defendant put the water on the rink surface");
*Culli v. Marathon Petroleum Co*, 862 F.2d 119, 122 (7th Cir. 1988) (gas station not liable for
plaintiff's slip on unknown substance). A reasonable jury could find that Menard itself created
the dangerous condition because it is uncontroverted that Menard placed the cords in the
furniture display. For these reasons, Menard is not entitled to summary judgment.

## CONCLUSION

Menard's motion for summary judgment is denied.


Dated: July 22, 2025

_____
APRIL M. PERRY
United States District Judge

---

[2] Menard's argument that a customer more likely pulled out the cords out from underneath the chairs is
unsupported speculation, and thus insufficient grounds to support summary judgment. *See Wendt v.
Menard, Inc.*, 2022 WL 4448750, at *4 (N.D. Ill. Sep. 23, 2022).